OHIO CASUALTY INSURANCE COMPANY, Movant,

v.

Ray ATHERTON as Administrator of the Estate of Mary L. Atherton, Respondent.

Supreme Court of Kentucky.

May 11, 1983.

Rehearing Denied Oct. 12, 1983.

Al Miller, Central City, for movant.

David Jernigan, Jarvis, Payton & Kinney, Greenville, for respondent.

GANT, Justice.

This is an action by a reparations obligor against the estate of an uninsured motorist to recover the $1,000 funeral or burial benefits paid to the estate of a deceased passenger after proof that those expenses had been incurred, pursuant to KRS 304.39–020(5)(a).

The facts herein were stipulated. Decedent, Mary L. Atherton, an uninsured motorist, was the owner and operator of a vehicle which collided with a truck, which collision resulted in her death and that of three passengers. One of the passengers was her father, Robert E. Atherton, whose estate applied to the Assigned Claims Bureau and Plan for basic reparations benefits, resulting in payment by the movant of the burial expense benefit of $1,000. Verified claim for this sum was filed with the estate of Mary L. Atherton, which was rejected in writing. No law suit other than this action has ever been filed as a result of the accident. This is a case of first impression in Kentucky. The trial judge herein denied recovery in the following language: "Where the amount of death benefit is not related to the extent of loss to a beneficiary, PIP (BRB) carrier payments do not carry subrogation rights. . . ."

The lower court relied upon *Schermer, Automobile Liability Insurance*, § 908, which states:

Where the death benefit is a fixed amount which is unrelated to the extent or nature of the beneficiaries' loss, it is treated as a life insurance benefit and not as an indemnity. Under these circumstances, absent a statutory grant, PIP carrier payments do not carry with them any subrogation rights.

This conclusion was based on a South Dakota case construing a statute of that state, the footnote noting that Arkansas, Colorado, Nevada, New York and Utah Acts appeared to be similar. An examina-

tion of the South Dakota Act discloses that it was a true accidental death benefit provision, providing for payment of the insured amount (not to be less than $10,000) without regard to the amount of financial or economic expense. However, KRS 304.39–020(5) requires proof of economic loss, and, in § (a) provides that "medical expense means reasonable charges incurred . . . including . . . a total charge not in excess of $1,000 per person for *expenses* in any way related to funeral, cremation and burial. . . ." Clearly, this is not "a fixed amount which is unrelated to the extent or nature of the beneficiaries' loss" as envisioned by Schermer.

The Court of Appeals, in affirming the lower court, did not utilize this approach, but held instead that KRS 304.39–070(2), "by its exact wording, precludes subrogation and reimbursement of death benefits." That statute reads:

A reparation obligor which has paid or may become obligated to pay basic reparation benefits shall be subrogated to the extent of its obligations to all of the rights of the person suffering the injury against any person or organization other than a secured person.

The holding of the Court of Appeals was that the statute in question allowed only for subrogation to the rights of "injured persons" and that in the absence of the words "survivor," "personal representatives" or "dependents," subrogation by and reimbursement to the reparation obligor by the uninsured motorist is precluded in death cases.

■ Search as we may, we are unable to find any "exact wording" which precludes death benefits. KRS 304.39–020(4) defines "injury" and "injured person" as meaning "bodily harm, sickness, disease or *death.*" Indeed, without statutory direction, we can think of no more severe injury from an accident than death. Thus, the movant, pursuant to KRS 304.39–070(2), has paid basic reparation benefits as a result of an injury. The fact that movant has paid these benefits to an estate, or is subrogated to the rights of a deceased, is of no conse-

quence, nor is the fact that the person causing the injury is deceased.

■ KRS 411.140 provides, "No right of action for personal injury . . . shall cease or die with the person injuring or injured . . ." and that "[a]n action may be brought . . . by the personal representative, or against the personal representative, heir or devisee. . . ." The fact that a particular statute giving rise to subrogation does not contain a specific provision that the action shall survive is without importance. Unless survival of the action is specifically precluded, the law is clear.

■ Respondent contends that the movant is barred from recovery because it is restricted to joining against a party in an action commenced by the injured party against the secured party or by submitting the claim for arbitration, as provided by KRS 304.39–070(3). This statute does not relate to actions against *unsecured* persons, only to *secured* persons, and thus has no relevance herein.

■ Movant further requests that the interest to which it is entitled be computed at 18% and that movant should be awarded attorneys' fees, should this action be reversed. It is our opinion that the denial of the claim herein was not without reasonable foundation as envisioned in KRS 304.39–210 and 220.

■ It is the opinion of this court that where a reparations obligor has paid the death benefits to the estate of a person killed in an accident involving a vehicle of an uninsured motorist, this death is an injury under the statute and the reparations obligor by independent action as the subrogee may seek recovery of the reasonable charges for funeral or burial expenses, not to exceed the statutory amount, against the uninsured party, his estate or such other persons against whom the action may survive. KRS 304.39–070(2); KRS 304.39–310(2); KRS 411.140.

We reverse the Court of Appeals and the lower court and remand this case to the lower court with direction to enter judg-

ment for the movant in the amount of $1,000, together with interest at 12% from the date of the denial of the claim.

All concur, except WINTERSHEIMER, J., who did not sit.